**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**
------------------------------------------------------------------------------X

Carl Williams,                                                          Civil Action No.:

          Plaintiff,


                                                **COMPLAINT**

          -against-


Linode Limited Liability Company;                    **PLAINTIFF DEMANDS**
Linode Limited Liability Company d/b/a Linode, LLC;    **A TRIAL BY JURY**
Linodian, LLC d/b/a Linode, LLC
Daniel Spataro, *individually*;
and,Thomas Asaro , *individually*

          Defendants.
------------------------------------------------------------------------------X

       Plaintiff, Carl Williams, as and for his Complaint against the above Defendants

respectfully alleges upon information and belief as follows:


## CIVIL COMPLAINT


       Plaintiff, CARL WILLIAMS, brings this action, for relief from discrimination, retaliation

and wrongful termination experienced while employed by Defendants, Linode Limited Liability

Company; Linode Limited Liability Company d/b/a Linode, LLC; Linodian, LLC; Daniel Spataro

(individually); and, Thomas Asaro (individually).  Plaintiff was disparately treated, discriminated

against, and retaliated against based on his sex/gender, sexual orientation and his age. Plaintiff

brings allegations under Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e

to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166

("Title VII")) and to remedy violations of the Pennsylvania Human Relations Act, as amended, 43

P.S. §§ 951, et. seq. ("PHRA"), the Philadelphia Fair Practices Ordinance, § 9-1100 et. seq

("PFPO"), and the Age Discrimination in Employment Act ("ADEA") Plaintiff alleges and avers in support thereof:

## **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

1. Around June 9 2021, Plaintiff timely filed a charge of sex/gender discrimination, sexual orientation discrimination, age discrimination and retaliation with the U.S. Equal Employment Opportunity Commission ("EEOC"), the and the Pennsylvania Human Relations Commission ("PHRC"), the Philadelphia Commission on Human Relations ("PCHR") alleging violations of Title VII, and the Pennsylvania Human Relations Act, 43 P.S. §§ 951-963 ("PHRA") and violations of the Philadelphia Fair Practices Ordinance, § 9-1100 et. seq. ("PFPO").

2. Plaintiff by and through his attorney requested, on both his Charge of Discrimination Cover Sheet as well as in the body of the email submission of the Charge, that his Charge be simultaneously filed with the PHRC and the PCHR and "any other State or local agency with whom [the EEOC has] a work sharing agreement."

3. On or around January 26, 2022, the EEOC issued Plaintiff a, "Dismissal and Notice of Right to Sue."

4. This action is being commenced within ninety (90) days of Plaintiff receiving the Notice of Right to Sue.

5. Plaintiff has complied with all administrative prerequisites to bring this lawsuit.

6. Plaintiff's claims are still pending before the PHRC and the PCHR because less than one year has elapsed since PHRC and PCHR assumed jurisdiction over Plaintiff's Charge.

7. Plaintiff will seek leave to amend this complaint to assert his PHRA and PFPO claims against the parties referenced in ¶ 9 above. See Federal R. Civ. P. 159a) (Courts "freely

give leave to amend when justice so requires"), 15(c) (Amendments "relate back" to the date of the original pleading), and 15(d) (Plaintiff may "serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented").

## **JURISDICTION AND VENUE**

8.    This Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331 because it involves questions under federal law under Title VII and claims under the ADEA.

9.    The Court has supplemental jurisdiction over Plaintiff's claims under state and local ordinance.

10.   Venue in this judicial district is proper pursuant to 28 U.S.C §1391(b) and 42 U.S.C. § 2000e-5(f)(3) because a substantial part of the acts or omissions giving rise to Plaintiff's claims occurred in Philadelphia, Pennsylvania, Philadelphia County within the Eastern District of Pennsylvania, and Defendants are subjected to personal jurisdiction here.

## **Parties**

11.   Plaintiff CARL WILLIAMS (hereinafter also referred to as either Plaintiff or "WILLIAMS") is an individual fifty-six (56) year old gay male who is a resident of the city of Haddonfield located within the county of Camden in New Jersey.

12.   Defendant LINODE LIMITED LIABILITY COMPANY (hereinafter also referred to as Defendant and "LINODE"), is a foreign business corporation duly existing under the laws of the State of New Jersey.

13.   Defendant LINODE operates is headquarters at 249 Arch Street, Philadelphia, PA 19106.

14.   LINODE LIMITED LIABILITY COMPANY also does business as LINODE, LLC and
      LINODIAN, LLC.  These are the same enterprise and all are both joint and individual
      employers of Plaintiff.

15.   At all times material, Defendant DANIEL SPATARO (hereinafter referred to as Defendant
      and "SPATARO") was and is an employee for Defendant LINODE.

16.   At all times material, Defendant SPATARO is employed as a Director of Infrastructure
      Operations for Defendant LINODE.

17.   At all times material, Defendant SPATARO held supervisory authority over Plaintiff.

18.   At all times material, Defendant THOMAS ASARO (hereinafter referred to as Defendant
      and "ASARO") was and is an employee for Defendant LINODE.

19.   At all times material, Defendant ASARO is employed as a Chief Operating Officer for
      Defendant LINODE.

20.   At all times material, Defendant ASARO held supervisory authority over Plaintiff.

21.   At all times material, Plaintiff was an employee for Defendant LINODE.


**Summary of Facts**

22.   On or around November 2014, Plaintiff was hired by Defendants for the role of network
      engineer.

23.   Plaintiff began working at a LINODE office located at 329 E. Jimmie Leeds Rd., Ste. A,
      Galloway, NJ 08033.

24.   During Plaintiff's first year of work, he reported directly to Defendant ASARO.

25.   After one year, Defendant ASARO was promoted and Defendant SPATARO became
      Plaintiff's new direct supervisor.

26. In or around March 2018, Plaintiff began working at a LINODE location in Old City Philadelphia, located at 249 Arch Street, Philadelphia, PA 19106.

27. Plaintiff's supervisor at that location remained Defendant SPATARO who was the manager of the network engineers like Plaintiff.

28. From the time Plaintiff began working at this location in Old City, Philadelphia, he was consistently badgered, ridiculed and discriminated against due to his age.

29. There was no one else Plaintiff's age in the network engineering department who was near fifty-four (54) years of age (Plaintiff's age) while Plaintiff was employed there.

30. Plaintiff had worked for the company for approximately four (4) years at this time and four other much younger network engineers were all promoted ahead of Plaintiff.

31. Plaintiff also suffered constant comments about his age, by means of example only and not to be construed as an exhaustive list Plaintiff's co-workers said, "they are looking for a 'young' superstar," when speaking about a potential new hire in the engineer department.

32. On another occasion, Andrew Dampf brought in an older potential candidate for an interview and Mr. Dampf proceeded to berate and belittle the older potential employee in front of Plaintiff.

33. On another occasion at a conference, Andrew Dampf, referred to an older professional gentleman as the "old man with bladder problems," to Plaintiff.

34. Despite the fact that Plaintiff consistently expressed an interest in a Senior Network engineer role, a third younger employee was promoted.

35. Owen was promoted to the Senior Network Manager, even though he was fifteen years Plaintiff's junior and Plaintiff complained to Defendant SPATARO that it was unfair that

all of the younger employees were being promoted, and that Plaintiff had not received a promotion or an increase since he began working there.

36. Four substantially younger co-workers, Tim Kaufman, Owen Conway, Andrew Dampf, and Tom Duff were all promoted to higher level roles, through the first four years that Plaintiff worked for LINODE.

37. When Tim Kaufman was promoted, Plaintiff went to Defendant ASARO and requested the opportunity to apply for the position.

38. Plaintiff did in fact apply and Defendants never provided Plaintiff with an interview.

39. Plaintiff now reported to all of the younger workers, so he in effect was demoted because all of the junior employees who were substantially younger had been promoted to higher level positions.

40. As a result of the discrimination, Plaintiff filed a charge of discrimination in 2018 with the Pennsylvania Human Relations Commission.

41. Defendants, realizing that they were in violation of the law offered Plaintiff the ability to select a new title, though they simultaneously informed Plaintiff that they would never make him a manager.

42. Plaintiff accepted a new title of Director of Network Strategy.

43. At that time, since Defendants finally promoted Plaintiff, he withdrew his complaint with the Pennsylvania Human Relations Commission.

44. However, the age discrimination and retaliation only escalated.

45. Plaintiff complained to Defendant ASARO and reported that he felt he was being discriminated against and treated differently than the other network engineers because of his age.

46.     In addition to the age discrimination, Plaintiff's co-workers knew that he was gay as well and would regularly make lewd and sexually charged comments about touching each other's "dicks" in front of Plaintiff to make him uncomfortable.

47.     Plaintiff had made the complaints to his direct supervisor Defendant SPATARO and to Defendant ASARO who is Defendant SPATARO'S supervisor.

48.     Following Plaintiff's complaint, Adam Rambo, a substantially younger co-worker went on a rant about how he didn't know what ageism was and that he never heard the term before.

49.     Plaintiff knew at that point that Defendants ASARO and SPATARO had spoken about Plaintiff's complaints to Plaintiff's co-workers.

50.     Neither of them did any investigation into Plaintiff's complaints, nor did they take any remedial measures.

51.     During a conversation over a collaborative tool called Slack, the younger engineers would flash old man emojis on the screen while Plaintiff was participating in the conversation.

52.     The emoji incident occurred during Plaintiff's presentation and was just two days after Plaintiff's complaint of discrimination to Defendants SPATARO and ASARO.

53.     When Plaintiff's promotion was announced to the engineering team, a twenty-five (25) year-old co-worker, Adam Rambo, said under his breath "in title only."

54.     This comment was meant to indicate that the younger engineers did not view Plaintiff as having a higher-level position or a promotion at all.

55.     In or around early 2019, Steve Shaw was hired by Defendants as a senior network engineer.

56.     On Mr. Shaw's first day, he met Plaintiff and the two had a professional, cordial conversation.

57.    The following day. Mr. Shaw went to get coffee or have lunch with Adam Rambo who regularly discriminated against Plaintiff because of his age.

58.    He was no longer cordial when he interacted with Plaintiff following that lunch.

59.    A similar situation occurred when Owen Conway began working for Defendants.

60.    He loudly and aggressively yelled "How old are you, Carl?" at Plaintiff three times in a row when he first began at LINODE.

61.    At a business dinner later that evening, Plaintiff reported Mr. Conway's aggression about his age to his manager, Defendant SPATARO.

62.    In or around January 2020, Plaintiff again reported to Defendant SPATARO that he feels he is constantly harmed and discriminated against based on his age.

63.    In February 2020, Plaintiff went on a business trip to the Philippines with Defendant SPATARO.

64.    Plaintiff was the Director of Network Strategy and as a result was working with a company in the Philippines for a business partnership.

65.    At the conclusion of the dinner meeting, Defendant SPATARO stated that the next trip he would be taking Adam Rambo, a much younger employee than Plaintiff.

66.    Plaintiff told Defendant SPATARO that this was not within Adam Rambo's role, that this was specific to Plaintiff's role.

67.    This was a red flag to Plaintiff that Defendant SPATARO was now limiting Plaintiff's role and discriminating against Plaintiff by giving younger employees Plaintiff's job duties.

68.    Additionally, Defendants' promised Plaintiff through the course of his employment that he would be paid commissions on certain deals at the time deals were made and on a residual ongoing basis year to year.

69.  Defendants failed to pay Plaintiff on two bonuses that he earned during the course of his employment.

70.  Defendants additionally told Plaintiff that he would receive equity in the company, yet they never gave Plaintiff an equity share that he was promised.

71.  At the same meeting, Defendant SPATARO was telling Plaintiff that a transgender employee was being terminated.

72.  He went on to tell Plaintiff that Defendant LINODE had another open position and that there was a transgender applicant for that position, but that he did not want to hire a transgender person for the role because they were "trouble."

73.  Plaintiff reported to LINODE'S in-house counsel that he felt there was a deeply discriminatory and retaliatory environment at LINODE.

74.  Plaintiff suggested that when he was a manager at another company there was mandatory discrimination and harassment training annually for employees.

75.  Defendant LINODE then changed their marketing online and on a page about discrimination, age was removed as a protected category.  A photograph on the same page was of a number of LINODE'S younger employees.

76.  Plaintiff expressed to LINODE that he felt this would deter older job applicants from applying at the company.

77.  Plaintiff then attempted to provide insight to the company on protected language that would be useful and more inclusive for all potential applicants and employees.

78.  This occurred around June 2020, and all of Plaintiff's suggestions were rebuffed by Defendants.

79.    Then in the summer of 2020, Defendants informed Plaintiff that they wanted to promote Tom Duff, another employee who is substantially younger than Plaintiff.

80.    In or around August 2020, Defendants unlawfully terminated Plaintiff's employment in retaliation for his consistent complaints of discrimination during his employment. Defendants claimed that Plaintiff did not work one day and failed to call out.

81.    This is in fact pretext, because Plaintiff was working from home that day and was logged into the system and completed work that day.

82.    Plaintiff took one thirty-minute break, but worked remotely, like everyone else due to Covid.

83.    Additionally, Defendants have a progressive discipline policy in place, and as such, Plaintiff should not have been terminated for a one occurring offense.

84.    In fact, Defendants went out and hired a much younger candidate, William Marantz, who interviewed at LINODE years before to replace Plaintiff.

85.    Mr. Marantz is approximately forty-two (42) years of age at the time he replaced Plaintiff who was fifty-six (56) years old when he was terminated.

86.    Defendants at all times failed to properly investigate or to take any remedial measures related to Plaintiff's complaints of unlawful discrimination, harassment and hostile work environment.

87.    As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages as against all the Defendants, jointly and severally.

88.     The above are just some of the examples of unlawful discrimination and retaliation to which the Defendants subjected the Plaintiff.

89.    Defendants have established a pattern and practice of discrimination in their workplace.

**AS A FIRST CAUSE OF ACTION**
**DISCRIMINATION**
**UNDER TITLE VII**
**(Against Corporate Defendants Only)**

90.    Plaintiff, Carl Williams, hereby incorporates by reference each and every allegation made in the above paragraphs of this complaint.

91.    Title VII provides, in relevant part, that "it shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of his race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

92.    Title VII further provides that "it shall be an unlawful employment practice for any employer . . . controlling . . . training or retraining, including on-the-job training programs to discriminate against any individual because of his race, color, religion, sex, or national origin in admission to, or employment in, any program established to provide . . . training." 42 U.S.C. § 2000e-2(d).

93.    Title VII further provides that "un unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m).

94.    The Defendants engaged in unlawful employment practices prohibited by Title VII by intentionally discriminating against Plaintiff with respect sex/gender.

95.    The Defendants subjected Plaintiff to adverse tangible employment actions—defined as significant changes in Plaintiff's employment status, discipline, denial of training, failure

to promote, reassignment with significantly different job responsibilities, and decisions

causing changes in significant changes in his employment benefits.

96.     Plaintiffs protected characteristics (sex/gender) played a determinative factor in the

Defendants' decisions.

97.     The Defendants cannot show any legitimate nondiscriminatory reasons for its

employment practices and any reasons proffered by the Defendants for its actions against

Plaintiff are pretextual and can readily be disbelieved.

98.     Alternatively, Plaintiff's protected status played a motivating part in the Defendants'

decisions even if other factors may also have motivated its actions against Plaintiff.

99.     The Defendants acted with the intent to discriminate.

100.    The Defendants acted upon a continuing course of conduct.

101.    As a result of the Defendants' violations of Title VII, Plaintiffs has suffered damages,

including, but not limited to: past and future lost wages, pain and suffering,

inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress,

reputational harm, diminishment of career opportunities, and other harm, both tangible

and intangible.

**AS A SECOND CAUSE OF ACTION
HOSTILE WORK ENVIRONMENT
UNDER TITLE VII
(Against Corporate Defendants Only)**

102.    Plaintiff, Husieen Edmonds, hereby incorporates by reference each and every allegation

made in the above paragraphs of this complaint.

103.    Title VII also prohibits hostile work environment harassment, defined as unwanted

comments or conduct regarding the plaintiff's protected characteristics that have the

purpose or effect of unreasonably interfering with the terms and conditions of the plaintiff's employment. Harris v. Forklift Systems, 510 U.S. 17, 21 (1993).

104.   An employer is strictly liable for supervisor harassment that "culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998).

105.   Respondeat superior liability for the acts of non-supervisory employees exists where "the defendant knew or should have known of the harassment and failed to take prompt remedial action. Andrews v. city of Philadelphia, 895 F.2d 1469, 1486 (3d Cir. 1990).

106.   Employer liability for co-worker harassment also exists where "the employer failed to provide a reasonable avenue for complaint." Huston v. Procter & Gamble Paper Prods. Corp., 568 F.3d 100, 105 (3d Cir. 2009).

107.   The Third Circuit has held that the retaliation provision of Title VII "can be offended by harassment that is severe or pervasive enough to create a hostile work environment." Jensen v. Potter, 435 F.3d 444, 446 (3d Cir. 2006).

108.   Here, Defendant's conduct occurred because of Plaintiff's legally protected characteristics and was severe or pervasive enough to make a reasonable person of the same legally protected classes believe that the conditions of employment were altered and that the working environment was intimidating, hostile, or abusive.

109.   The discriminatory conduct directly refers to Plaintiff's gender.

110.   Plaintiff's supervisors had the authority to control Plaintiff's work environment, and they abused that authority to create a hostile work environment.

111.   Sexually explicit verbal conduct filled the environment of Plaintiff's work area.

112.    Defendants knew that the sexually explicit verbally- and physically-harassing conduct filled Plaintiff's work environment.

113.    Sexually explicit verbally harassing conduct occurred on an almost if not daily basis.

114.    Sexually explicit verbally harassing conduct caused Plaintiff to sustain severe emotional distress resulting in physical illness.

115.    Plaintiff subjectively regarded the Sexually explicit verbal and harassing conduct as unwelcome and unwanted and objectively opposed the conduct.

116.    The conduct was both severe and pervasive.

117.    The conduct was emotionally damaging and humiliating.

118.    The conduct unreasonably interfered with Plaintiff's work performance.

119.    The conduct was so extreme that it resulted in material changes to the terms and conditions of Plaintiff's employment.

120.    The Defendants provided a futile avenue for complaint.

121.    The Defendants retaliated against Plaintiff for his complaints.

122.    They Defendants acted upon a continuing course of conduct.

123.    As a result of the Defendants' violations of Title VII, Plaintiff has suffered damages including but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

## AS A THIRD CAUSE OF ACTION
## RETALIATION
## UNDER TITLE VII
## (Against Corporate Defendants Only)

124.    Plaintiff, Husieen Edmonds, hereby incorporates by reference each and every allegation made in the above paragraphs of this complaint.

125.    Title VII also prohibits hostile work environment harassment, defined as unwanted comments or conduct regarding the plaintiff's protected characteristics that have the purpose or effect of unreasonably interfering with the terms and conditions of the plaintiff's employment. Harris v. Forklift Systems, 510 U.S. 17, 21 (1993).

126.    An employer is strictly liable for supervisor harassment that "culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998).

127.    Respondeat superior liability for the acts of non-supervisory employees exists where "the defendant knew or should have known of the harassment and failed to take prompt remedial action. Andrews v. city of Philadelphia, 895 F.2d 1469, 1486 (3d Cir. 1990).

128.    Employer liability for co-worker harassment also exists where "the employer failed to provide a reasonable avenue for complaint." Huston v. Procter & Gamble Paper Prods. Corp., 568 F.3d 100, 105 (3d Cir. 2009).

129.    The Third Circuit has held that the retaliation provision of Title VII "can be offended by harassment that is severe or pervasive enough to create a hostile work environment." Jensen v. Potter, 435 F.3d 444, 446 (3d Cir. 2006).

130.    Here, Defendant's conduct occurred because of Plaintiff's legally protected characteristics and was severe or pervasive enough to make a reasonable person of the same legally protected classes believe that the conditions of employment were altered, and that the working environment was intimidating, hostile, or abusive.

131.    The discriminatory conduct directly refers to Plaintiff's sex/gender.

132.    Plaintiff's supervisors had the authority to control Plaintiff's work environment, and they abused that authority to create a hostile work environment.

133.    Discriminatory sex/gender comments filled the environment of Plaintiff's work area.

134.    Defendants knew that the sex/gender discriminatory conduct filled Plaintiff's work environment.

135.    The sex/gender discriminatory conduct occurred on an almost if not daily basis.

136.    The sex/gender discriminatory conduct caused Plaintiff to sustain severe emotional distress resulting in physical illness.

137.    Plaintiff subjectively regarded the sex/gender discriminatory conduct as unwelcome and unwanted and objectively opposed the conduct.

138.    The conduct was both severe and pervasive.

139.    The conduct was emotionally damaging and humiliating.

140.    The conduct unreasonably interfered with Plaintiff's work performance.

141.    The conduct was so extreme that it resulted in material changes to the terms and conditions of Plaintiff's employment.

142.    The Defendants provided a futile avenue for complaint.

143.    The Defendants retaliated against Plaintiff for his complaints.

144.    The Defendants acted upon a continuing course of conduct.

145.    As a result of the Defendants' violations of Title VII, Plaintiff has suffered damages including but not limited to the following: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**AS A FOURTH CAUSE OF ACTION FOR
DISCRIMINATION AND DISPARATE TREATMENT- WRONGFUL TERMINATION
AGE DISCRIMINATION IN EMPLOYMENT ACT ("ADEA"), 29 U.S.C. §621 *et. seq.*,
(NOT AGAINST INDIVIDUAL DEFENDANTS)**

146.   Plaintiff incorporates the foregoing paragraphs as if set forth at length herein.

147.   Defendant LINODE engaged in discriminatory conduct against Plaintiff because of his age.

148.   Defendants unlawfully terminated Plaintiff's employment and hired another substantially younger individual to replace Plaintiff.

149.   Plaintiff and other similarly situated employees are protected under the ADEA as they are at least forty (40) years of age.  Plaintiff and other similarly situated employees are further protected under the ADEA from discrimination and disparate treatment in relation/contrast to persons substantially younger.

150.   Defendant disparately treated Plaintiff and other similarly situated employees in relation to similarly situated substantially younger employees.

151.   Plaintiff makes claims for all damages available to him under the ADEA that resulted from the age discriminatory conduct that he endured during his employment with Defendants.

**AS A FIFTH CAUSE OF ACTION FOR
DISCRIMINATION AND HOSTILE WORK ENVIRONMENT
AGE DISCRIMINATION IN EMPLOYMENT ACT ("ADEA"), 29 U.S.C. §621 *et. seq.*,**

152.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

153.   Plaintiff suffered pervasive acts of discrimination when numerous discriminatory comments were made to him about his age.

154.   Plaintiff's suffered numerous adverse employment actions and his work environment became unbearable.

155.    As a result, Plaintiff seeks all damages under the law for his hostile work environment claims.

156.    Asfdssad

157.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

158.    Plaintiff suffered an adverse employment action when he was unlawfully terminated for reporting age discriminatory conduct to Defendants.

159.    Defendants failed to investigate or take appropriate remedial measures.

160.    Instead, Defendants terminated Plaintiff's employment and replaced Plaintiff with a substantially younger worker.

161.    Plaintiff makes claims for all damages available to him under the ADEA that resulted from the age discriminatory conduct that he endured during his employment with Defendants.

162.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, including but not limited to all emotional distress, back pay and front pay, punitive damages, liquidated damages, statutory damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

DEREK SMITH LAW GROUP, PLLC


_____
SAMUEL C. Wilson, Esq.
*Attorney for Plaintiff, Carl Williams*
1835 Market Street, Suite 2950
Philadelphia, PA 19103
T: 215-391-4790
F: 215-501-5911
Email: samuel@dereksmithlaw.com


Date:   April 26, 2022
        Philadelphia, PA