IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CARL WILLIAMS,**<br><br>    *Plaintiff,*<br><br>  v.<br><br>**LINODE LIMITED LIABILITY COMPANY, et al.,**<br><br>    *Defendants.* | **Case No. 2:22-cv-01618-JDW** |

### MEMORANDUM

At a trial, there are at least two sides to every story. That goes without saying because if the "litigants' versions of the case were in harmony, there would have been no need for this trial." *Bolt v. Hickok*, 887 F. Supp. 709, 721 (D. Del. 1995). After hearing everyone's story, our judicial system trusts juries to decide what happened. A jury's deliberations occur in a sanctum. Throughout trial, we tell jurors to avoid any outside information about a case and to decide the case based only on the evidence. And while they deliberate, we cut them off from the outside world. They have no cellphones or computers while they deliberate, just the exhibits, their memories of the testimony, and their common sense. And when they finish, we defer to their decisions, with very narrow exceptions.

In this case, each side told its story to a jury over a seven-day trial. Carl Williams told a jury that he experienced pervasive discrimination during his employment at Linode,

LLC, and that Linode fired him due to that discrimination. Linode told the jury that it fired Mr. Williams because he had an ongoing relationship with John Musbach, who had been accused of criminal activity that at least some Linode employees could not stomach. The jury concluded that Mr. Williams didn't prove his case.

Now, Mr. Williams wants a mulligan. He says my rulings before and during trial deprived him of a fair trial. While briefing that motion, he filed a reply brief that was late and overlength. I told him to shorten it, but Linode wants me to reconsider and strike his reply altogether. I won't deprive Mr. Williams of his reply. But I also won't give him a new trial. I've reviewed his arguments and the trial record, and I've concluded that Mr. Williams got a fair trial based on admissible evidence. I've also concluded that any errors that he posits did not prejudice the trial as a whole. I will therefore deny both Mr. Williams's motion for a new trial and Linode's request that I strike Mr. Williams's reply brief.

**I.      RECONSIDERATION**

Mr. Williams filed his reply brief in support of his new trial motion late and overlength. I struck the brief for being overlength and gave him an opportunity to refile. Linode asks me to reconsider that and to bar Mr. Williams's reply for its lateness. A court may reconsider a prior ruling if the moving party shows (1) an intervening change in the controlling law, (2) the availability of new evidence that was not available when the court issued its order, or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. *See Romero v. Allstate Ins. Co.*, 1 F. Supp. 3d 319, 420 (E.D. Pa. 2014). Courts

should grant reconsideration "sparingly." *Id.* There's no new evidence or new law, so presumably Linode thinks I made a clear error or that my ruling is manifestly unjust.

While deadlines are mandates and not suggestions, I balance the need to enforce them with the well-established preference to resolve disputes on the merits. *See Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984). As a result, I have the authority to "extend a missed deadline if the party seeking the extension shows that it was tardy due to 'excusable neglect.'" *In re Princeton Off. Park, L.P.*, 649 F. App'x 137, 141 n.3 (3d Cir. 2016) (quoting Fed. R. Civ. P. 6(b)(1)(B)). Under Rule 6(b), excusable neglect may extend to "inadvertent delays" and "is not limited strictly to omissions caused by circumstances beyond the control of the movant." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 392 (1993).

Although Mr. Williams does not provide a sufficient reason for his tardiness, his delay was not excessive. Linode suffers no prejudice from it. And Mr. Williams would suffer substantial prejudice if I did not consider his reply, which is the only chance he has to respond to Linode's arguments. Because Linode has not articulated a prejudice that it faces from my consideration of Mr. Williams's reply, I won't strike the filing. *See In re Princeton Off. Park, L.P.*, 649 F. App'x at 141 n.3.

## II. NEW TRIAL

### A. Legal Standard

After a jury trial, a judge may grant a new trial under Rule 59 "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). However, the judge will only grant a new trial where the "jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience." *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1353 (3d Cir. 1991). Granting a new trial is discretionary. *See Foster v. Nat'l Fuel Gas Co.*, 316 F.3d 424, 429 (3d Cir. 2003).

In granting a motion for a new trial on the basis of trial error, the judge must consider (1) whether an error was in fact committed and (2) whether that error was so prejudicial that denial of a new trial would be inconsistent with substantial justice. *Bhaya v. Westinghouse Elec. Corp.*, 709 F. Supp. 600, 601, *aff'd*, 922 F.2d 184 (3d Cir. 1990).

A judge "cannot speculate as to the content of the jury's deliberations." *See United States v. Russell*, 134 F.3d 171, 177 (3d Cir. 1998). The judge must assume the jury understood and followed the instructions it received. *See O'Brien v. Middle East Forum*, 57 F.4th 110, 122 (3d Cir. 2023). Absent proof of improper extraneous influence, a judge will not guess or inquire as to the jury's thought process. *See Van Buskirk v. Carey Canadian Mines, Ltd.*, 760 F.2d 481, 488 (3d Cir. 1984). "Extraneous influences" include communications between the judge and jury outside the presence of counsel. *See id.*

4

**B.      Preliminary Matters**

**1.      Post-trial juror comments**

After a jury returns a verdict, I often permit counsel for the Parties to speak with jurors who are willing to do so. The opportunity lets counsel get feedback on the substance and style of their performance. The session takes place in the courtroom but off the record, and it is informal. Some jurors stay, others don't.  I afforded counsel for the Parties in this case that opportunity. Now, Mr. Williams seeks to use what some jurors said during that discussion to support his Motion. To get around the fact that there is no record of the conversations, Mr. Williams's counsel, Seth Carson, submits a Declaration reporting on what he claims the jurors said to him, including that the jurors believed Mr. Williams to be "complicit" in Mr. Musbach's criminal activity. (ECF No. 81-1 at ¶ 20.)

At least two problems. *First*, the juror's statements as related in Mr. Carson's Declaration are hearsay. They were made out-of-court, in the sense that court was not in session (even though the conversation happened in the courtroom), and Mr. Williams offers them for their truth. But I have no way of knowing what the jurors said or the context in which they said it. *Second*, the jury's statements don't matter. It is "well settled … that the jury's deliberative processes are not legally cognizable, except where subject to extraneous influences." *See Van Buskirk*, 760 F.2d at 488 (internal quotation and citation omitted). Mr. Carson's Declaration doesn't suggest that there was any outside influence. It just reports on intra-jury discussions and thought process. To the extent that those

thoughts evince "confusion[,]" that's "an inevitable result of jury deliberations" and cannot support a finding of a new trial. *See id.*

Finally, I note that Mr. Carson's introduction into the record of the jury's comments violates a trust between the bench and the bar. I give lawyers the chance to talk to jurors as an opportunity to learn from the experience. The learning opportunity is particularly important as jury trials have become less common. But the chance to talk with the jurors is a privilege, not a right. And by introducing the jurors' comments and using them as a basis to seek post-trial relief, Mr. Carson has abused that privilege. Jurors are willing to speak with counsel because they understand it is off the record, and if they think that their words will become fodder for post-trial motions, they won't want to speak. In addition, lawyers who prevail at trial will have no choice but to object to having jurors available to the losing counsel, and in the process they will forfeit their only opportunity to learn from the jurors. That shouldn't happen. Having abused the privilege of speaking with jurors, Mr. Carson should expect that I will not afford him the opportunity again in the future.

### 2. References to Mr. Carson's professionalism

In its response to the new trial motion, Linode cites instances where other judges in this court, including me, have sanctioned Mr. Carson in other cases. But what happened in other cases has nothing to do with the merits of Mr. Williams's new trial motion. It's a transparent attempt to poison me in my assessment of Mr. Williams's arguments. That's inappropriate. Linode's counsel may have frustrations with Mr. Carson. Indeed, Linode's

counsel, Jonathan Cavalier, made those frustrations plain during trial. But this isn't the place to air those grievances. This is a motion for a new trial, not a sanctions motion, and my job is to resolve the motion on its merits, not based on Mr. Carson's history in other, unrelated cases.

### C. John Musbach

Mr. Musbach is not a party, and he did not testify at trial, but his shadow loomed large throughout the proceedings. Mr. Musbach is a former Linode employee. He had a personal relationship with Mr. Williams. At trial, the nature of that relationship was a bit unclear. But at points, Mr. Williams acknowledged that he had a "romantic relationship" with Mr. Musbach. (Tr. Day 4 at 82:11-15.) He described he and Mr. Musbach as "companions" and "partners." (*Id.* at 84:13.)

In 2016, before Mr. Williams's romantic relationship with Mr. Musbach began, Mr. Musbach exchanged sexually explicit images with a teenage boy. He faced charges for which he was ultimately convicted and sentenced to a non-custodial sentence. During the pendency of those charges, he tried to enter into a contract to have the boy killed. But that fact didn't come to light for several more years, until August 2020.

On August 13, 2020, the *Philadelphia Inquirer* reported on Mr. Musbach's arrest in connection with the attempted killing. The article recounts Mr. Musbach's history and describes the charges against him at that point. The end of the article reports that the new allegations "came as a surprise to [Mr. Musbach's] partner, Carl Williams." (Ex. 24.)

The article also reports that Mr. Williams testified at Mr. Musbach's initial appearance that while Mr. Musbach "had been open about his past problems with child porn, he had not mentioned trying to have someone killed." (*Id.*)

Linode claims that at least one or two of its employees saw the article (and maybe more). Dan Spataro, who was Mr. Williams's supervisor at the time, testified that he was particularly exorcised by what he read and that he told his supervisors he could no longer work with Mr. Williams and the company would have to decide if "it's him or me." (Tr. Day 6 at 145:19.) The company decided to fire Mr. Williams, but it didn't tell him the true reason when it fired him. Nonetheless, at trial, Linode pointed to Mr. Williams's relationship with Mr. Musbach as its legitimate, non-discriminatory reason for terminating Mr. Williams.

Before trial, Mr. Williams asked me in an *in limine* motion to exclude all evidence concerning Mr. Musbach. I refused, but I explained that at trial I would "only admit evidence about Mr. Musbach if Defendants can lay an appropriate foundation that the evidence impacted their thinking at the time of the termination decision or to the extent that it impacts Mr. Williams's emotional distress claim." (ECF No. 61 at 4.) I followed that ruling at trial and permitted Linode to offer some evidence about Mr. Musbach at trial, but I rejected other evidence. Mr. Williams questions that decision, in several respects.

<u>Rule 403 and evidence about Mr. Musbach.</u> There's not much dispute that evidence about Mr. Musbach was relevant. Linode identified it as a basis for its termination decision,

8

and it needed to provide context for its decision. Also, Mr. Williams claimed that the termination caused him a great deal of emotional distress, and Linode was entitled to develop evidence to show, and argue to the jury, that other events in Mr. Williams's life—like the arrest of his romantic partner for trying to kill an underage boy—were the real causes of stress that he experienced.

Federal Rule of Evidence 403 did not require me to exclude that evidence. It was, no doubt, somewhat salacious and risked enflaming the jury's passions. But it was also highly probative, both of Linode's explanation for its decision to terminate Mr. Williams and as to the cause of Mr. Williams's emotional distress at the time. Given the high degree of probity, there's no merit to Mr. Williams's suggestion that the risk of unfair prejudice substantially outweighed the evidence's probative value, as Rule 403 requires. I explained the balance that I was striking at the Final Pretrial Conference, and I hewed to that at trial. (*See* ECF No. 82 at 67:8-14.) It's worth noting that I did exclude some information about Mr. Musbach that fell on the wrong side of the balancing test, such as Mr. Musbach's plea agreement and exhibits that suggested that Mr. Williams helped to finance Mr. Musbach's attempt to have the boy killed. (*See id.* at 69:14-72:25.) There was no error in permitting the jury to hear about Mr. Williams's relationship with Mr. Musbach or about the charges against Mr. Musbach in August 2020.

In his reply brief, Mr. Williams contends that I did not put a Rule 403 analysis on the record. That argument is hard to square with the record. I made a Rule 403 analysis in

ruling on the *in limine* motions, I did the analysis at the final pretrial conference, and I did it several times during trial when Mr. Williams raised or re-raised (or re-re-raised) arguments about Mr. Musbach and Rule 403. (*E.g.*, Tr. Day 4 at 4:4-10:11.)[1]

References to events after Mr. Williams's termination. Mr. Williams claims to have experienced emotional distress after his termination. The events in his life after his termination that might cause that distress were therefore relevant, and I permitted Linode to introduce them. I also told Mr. Williams that I had struck a balance to permit such evidence when I ruled on his *in limine* motions. Nonetheless, Mr. Williams claims that it was error for me to have allowed that evidence and suggests that I misled him into thinking that I would exclude it.

*First*, there was no error in admitting the evidence. Mr. Williams testified at length about the emotional distress that he felt after Linode fired him. Linode had good reason to explore what else might cause that distress. And it was entitled to impeach him by suggesting that he was lying when he testified that developments in Mr. Musbach's criminal case did not cause him emotional distress, only "great concern." (Tr. Day 4 at 103:18-20.) The 403 balancing counseled in favor of admitting this testimony.

---

[1] In his Motion, Mr. Williams references Rule 404(b), too. (ECF No. 81 at 12.) It's not clear why. He never raised a Rule 404 objection at trial, and it's not clear why he would have. To the extent he intends to invoke Rule 404(b) now, his failure to do so at trial constitutes a waiver of that issue.

*Second*, Mr. Williams argues that I misled him into presenting evidence that opened the door for this testimony because I suggested in pretrial proceedings that I would not permit Linode to introduce this information. The record undercuts that assertion. In ruling on the *in limine* motions, I stated in no uncertain terms that I would permit evidence about Mr. Musbach's criminal prosecution "to the extent that it impacts Mr. Williams's emotional distress claim." (ECF No. 61 at 4.) Despite that warning, and knowing what was coming, Mr. Williams pressed ahead with his emotional distress claim. The resulting cross-examination was predictable. If Mr. Williams wanted to avoid this, he could have done so. He can't blame me if he didn't understand the significance of the *in limine* ruling that I issued.

<u>Comments about Mr. Musbach in opening and closing statements.</u> During opening arguments, Linode's counsel made statements about Mr. Musbach, including what the jury would hear about Mr. Musbach. For the most part, those arguments were substantively accurate. And to the extent they weren't accurate, they didn't prejudice the trial. In both the preliminary and final jury instructions, I instructed the jury that statements by lawyers, including during opening statements and closing arguments, do not constitute evidence and that the jury should decide the case based on the evidence. Such a limiting instruction negates potential prejudice suffered from improper remarks during openings and closings. *See Edwards v. City of Phila.*, 860 F.2d 568, 575 (3d Cir. 1988); *see also Vandenbraak v. Alfieri*, 209 F. App'x 185, 190 (3d Cir. 2006).

11

Even if the statements could factor into a prejudice analysis, they would not justify a new trial. Many of the statements about which Mr. Williams complains[2] find some factual support in the record. Mr. Musbach was charged with and convicted of sexual misconduct with a minor. (*See, e.g.*, Tr. Day 4 at 80:2-22; 82:16-24.) Mr. Williams and Mr. Musbach also had a romantic relationship. (*See id.* at 84:4-7.) Just because Mr. Williams disagrees with Linode's description of the evidence doesn't make Linode's remarks improper.

Linode's counsel did make a few statements during his opening statement that the evidence did not support, mostly suggesting that at the time of Mr. Williams's termination, the FBI was investigating Mr. Williams or was searching Linode's systems. There was no evidence to support those assertions at trial. However, those statements did not prejudice the trial.

If the ground for a new trial is improper conduct by an attorney, then the attorney's conduct constitutes reversible error only where "she engaged in argument injecting prejudicial extraneous evidence, such that the improper statements so pervaded the trial as to render the verdict a product of prejudice." *Leonard v. Stemtech Int'l Inc.*, 834 F.3d 376, 399 (3d Cir. 2016) (cleaned up). "[I]mproper comments during closing arguments rarely rise to the level of reversible error." *Dunn v. HOVIC*, 1 F.3d 1371, 1377 (3d Cir.), *modified*, 13 F.3d 58 (3d Cir. 1993) (internal quotation and citation omitted). A judge has

---

[2] *See* ECF No. 81 at 8-9.

"considerable discretion in determining whether conduct by counsel is so prejudicial as to require a new trial." *Draper v. Airco, Inc.*, 580 F.2d 91, 94 (3d Cir. 1978).

Mr. Williams tries to clear this hurdle by arguing that these statements caused the jury to think that Mr. Williams was complicit in Mr. Musbach's conduct. I find no evidence that Linode improperly tied Mr. Williams to Mr. Musbach's bad acts. Mr. Williams cites no portion of the trial in support of his argument that Linode conflated Mr. Williams's behavior with Mr. Musbach's. He just asserts that Linode's opening statement was "a not subtle suggestion that Carl Williams was complicity in pedophilia and child murder." (ECF No. 81 at 10.) On my review of the transcript, I don't agree. During the final pre-trial conference, I was cognizant of this issue and excluded evidence and testimony that would have suggested to the jurors that Mr. Williams financed Mr. Musbach's criminal activity. I stuck to that during trial, and that evidence did not come before the jury. The jury heard extensive testimony relating to Mr. Musbach during trial. Considering that evidence, the jury could assess the accuracy of Linode's opening statement. *See Meals v. Port Auth. Trans-Hudson*, No. CIV.A. 12-2628 JLL, 2014 WL 2619843, at *4 (D.N.J. June 12, 2014), *aff'd sub nom. Meals v. Port Auth. Trans Hudson Corp.*, 622 F. App'x 121 (3d Cir. 2015).

<u>Exhibit 24.</u> Linode introduced as Exhibit 24 the *Inquirer* article about Mr. Musbach. I permitted it to do so not for its truth but for its impact on the Linode employees who testified that they received it (most notably, Mr. Spataro). That was not error. Federal Rule of Evidence 801 defines "hearsay" as a statement that a "party offers in evidence to prove

the truth of the matter asserted in the statement." Fed. R. Evid. 801(c)(2). Whether a challenged statement is hearsay "turns on the purpose for which it is offered." *United States v. Sallins*, 993 F.2d 344, 346 (3d Cir. 1993). If a party offers an out-of-court statement for a purpose other than its truth, such as to show the effect that it would have on the listener (or, in this case, the reader), then the statement is not hearsay. *See U.S. v. Edwards*, 792 F.3d 355, 357 n.2 (3d Cir. 2015).

Mr. Williams complains that some of Linode's witnesses testified differently about the article in their depositions than they did at trial. That might be true, but that's fodder for cross-examination, not a basis for me to exclude the evidence.

Mr. Williams also argues that I should have given the jury a limiting instruction about the purpose for which the article was introduced. I disagree. First, when Mr. Williams's counsel asked about a limiting instruction during the trial, it was in the context of what I might include in the final jury instructions, and I told him that we would address that at the charge conference. (Tr. Day 4 at 6:5-7:21.) But he didn't renew the request at the charge conference. (*See generally* Tr. Day 5 at 227:23-246:10.)

Even if Mr. Williams could show that the admission of Exhibit 24 without a limiting instruction was error, he could not show prejudice because the jury would have heard most—if not all—of what's in the article anyway. Each fact that the article recited about Mr. Musbach was fair game for Linode to explore with Mr. Williams on cross-examination, particularly as it related to his emotional distress claim. And that cross-examination could

have presented the facts as truths, not just as assertions for a listener. Because the jury would have heard the substance either way, there was no prejudice from admitting the article.

### D.     Arguments About Document Contents

During trial, I permitted both Mr. Williams and Linode to talk about the evidence that I admitted and to ask the jury to draw conclusions based on that evidence, including what the evidence showed or did not show. As a result, Linode suggested during witness examinations and argued to the jury that the written communications admitted as exhibits at trial did not include any evidence of discrimination. (*See, e.g.*, Tr. Day 3 at 81:4-9; 152:7-25; Tr. Day 7 at 49:16-20; 51:3-6.) Mr. Williams, in turn, testified that he had been a victim of discrimination and pointed to some documents in evidence to back up his claim.

But Mr. Williams tried to go one step further. He claimed during his testimony that documents exist to corroborate his claims but conceded that he didn't have those documents available to him court. (*See* Tr. Day 3 at 130:22-131:10.) His counsel then tried to argue during trial and closing that Linode had, but had not produced, documents that would support Mr. Williams's claims. (Tr. Day 5 at 6:11-13:8; Tr. Day 7 at 11:21-12:1.) The closing argument led to an objection that I sustained and a sidebar.

My ruling was correct. There's a difference between arguing to a jury about what the evidence shows and asking the jury to speculate about whether documents not in evidence might rebut the documents that I did admit into evidence. And there's certainly

no basis to argue at trial about what could, or could not, have been produced in discovery and whether material that someone did not produce might have supported a claim at trial. But that's what Mr. Williams tried to do. He asked the jury to infer that documents existed that supported his claims to rebut Linode's arguments about what the evidence before the jury showed.

Mr. Williams argues that my approach to the document-related arguments was imbalanced, but that argument reflects his lack of understanding of the distinction that I drew at trial. It's one thing to talk about what is, or is not, in the evidence, as Linode did at trial. That is not asking the jury to draw an "adverse inference," as Mr. Williams argues. (ECF No. 81 at 15-16.) It is an argument about how to interpret the evidence. Mr. Williams, on the other hand, did not ground his argument in the evidence. Even though it related to what documents might, or might not, show, it was about documents that were not at trial. It was, in effect, an effort to get the jury to conclude that Linode was hiding something in documents that the jury hadn't seen. That was improper, and I did not err in sustaining objections to Mr. Williams's attempts to make those arguments.

### E. Leading Questions

Although Mr. Williams complains that I permitted Linode to use leading questions, he doesn't point me to a single instance where I overruled an objection to a leading question. This isn't a truffle hunt where I have to parse the whole trial transcript to find the instance to which Mr. Williams refers; he has to point me to it. He hasn't. Even if he

did, he has not even tried to demonstrate prejudice as a result. The leading questions are therefore not a basis for a new trial.

      **F.     EEOC Position Statement**

The jury heard testimony from Vincent Palochko who served as Linode's Director of HR. During that testimony, Mr. Williams's counsel sought to introduce statements that Linode made in its position statement before the EEOC. But Mr. Palochko testified that he "didn't draft" the statement and wasn't familiar with it. (*See* Tr. Day 4 at 232:7-8.) So, when Mr. Williams tried to introduce the position statement, I sustained a foundational objection. (*See id.* at 233:19-234:4.) Mr. Williams complains that he wanted to use the position statement to show that Linode made inconsistent statements about its reason for terminating Mr. Williams. And he could have done so, if he had a witness available to lay a foundation for its introduction. But his arguments at trial were about the applicability of hearsay rules to the position statement, not about the proper foundation to admit it. He makes the same mistake in his motion, where his argument focus all on hearsay, not on foundation. (*See* ECF No. 81 at 17.) I did not err in excluding the position statement given the lack of foundation.

Even if I did err, though, Mr. Williams did not suffer any prejudice. He says that he wanted to introduce the position statement to show that Linode had given contradictory reasons for firing him. During trial, though, Linode's witnesses (including Mr. Spataro and Mr. Palochko) all acknowledged that they lied to Mr. Williams about their reasons for his

termination him when they met with him to deliver the news. And they also acknowledged that the continued to lie about their reasons for terminating Mr. Williams during discovery in this case, including in sworn interrogatory responses. Temporally, the position statement came between the termination and the interrogatory responses. Had I admitted it into evidence, it would have been cumulative of the other evidence before the jury. Its exclusion did not prejudice Mr. Williams.

## III.   CONCLUSION

Trials have winners and losers. It's the nature of the game. In the case, the jury found against Mr. Williams. I have no basis to disturb that verdict, so I will deny his motion for a new trial. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

March 29, 2024